IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANET AINSWORTH, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 2:05-cv-740-B |
| | ) |
| DEPUTY CHRIS INABINETT, et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' MEMORANDUM BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

COME NOW the Defendants, Covington County Sheriff Anthony Clark and Covington County Deputy Sheriff Chris Inabinett, and file this Memorandum Brief in Support of their contemporaneously filed Motion to Dismiss.

**INTRODUCTION**

The Plaintiffs bring this 42 U.S.C. § 1983 action against Sheriff Clark and Deputy Inabinett alleging violations of their rights under the Fourth Amendment to the United States Constitution. Specifically, both Plaintiffs allege that Deputy Inabinett used excessive force against them, and that Sheriff Clark was deliberately indifferent in hiring, retaining, and training Deputy Inabinett.

As alleged in their Complaint, the Plaintiffs' claims arise from an incident that occurred at their home in Red Level, Alabama. On July 13, 2005, Plaintiff N.A., who suffered from an unspecified mental illness, attempted suicide by wrapping a belt around his neck and choking himself with it. Plaintiff N.A. was "in a distressed state and foaming at the mouth." (Complaint

at ¶¶ 11-12.)  Plaintiff Janet Ainsworth called 911 to obtain help for N.A., who is her son.  Id. at ¶ 13.

Officer David Anderson of the Red Level Police Department and Deputy Inabinett responded to Ms. Ainsworth's call for help.  (Complaint at ¶ 16.)  According to the Complaint, the Covington County Sheriff's Department was aware of N.A.'s violent propensities because deputies from the department responded to the Plaintiffs' home on "several occasions."  Id. at ¶ 10.  Officer Anderson arrived first and found N.A. holding on to the metal bars of his bed and "expressing great fear and apprehension."  Id. at ¶ 18.  According to the Complaint, N.A.'s anxiety was abating but he did not release his grip on the bed.  Id. at ¶ 19.[1]

At this point, Deputy Inabinett arrived with his Taser drawn.  (Complaint at ¶ 21.)  Deputy Inabinett pushed Ms. Ainsworth out of the way to get to N.A.'s room, causing Ms. Ainsworth to strike the wall and bruise her arm.  Id. at ¶ 23.  Deputy Inabinett leaped on to the bed where N.A. was still holding on to the headboard and apparently still had the belt wrapped around his neck.  Id. at ¶¶ 18, 24.  Deputy Inabinett first attempted to gain control of N.A. by striking him, and when that failed, finally obtained control of him by using his Taser.  Id. at ¶ 25, 29.  N.A. was placed in handcuffs, arrested, and taken to a hospital.  Id. at ¶ 35.

According to the Complaint, Deputy Inabinett has been involved in ***one*** other case of ***alleged*** excessive force.  (Complaint at ¶ 39.)  The Plaintiffs' hyperbole notwithstanding, the incident underlying Henderson v. Inabinett, United States District Court for the Middle District of Alabama, Case Number 2:05-cv-64, has ***not*** resulted in any finding that Deputy Inabinett engaged in excessive force.  The Henderson case has only now entered the discovery phase as a review of PACER quickly reveals.  (Exhibit A, Civil Docket for Case # 2:05-cv-64, printed

---

[1] The Plaintiffs aver that N.A. "began to release his grip on the headboard of the bed," but they do not allege that he actually let go of it.  (Complaint at ¶ 18.)

2

September 6, 2005, "Henderson docket.") Additionally, the Covington County grand jury refused to even indict Deputy Inabinett, or anyone else for that matter, for anything done in the Henderson case. (Exhibit B, Covington County Grand Jury Return, Case No. 567.)[2] The Plaintiffs' attorneys are well aware of these facts as they also represent the Plaintiff in the Henderson case. (Henderson docket at p. 1.)

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Complaint, at least insofar as it relates to all of the Plaintiffs' claims against these Defendants, contain little more than conclusory allegations that cannot survive a motion to dismiss. See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F. 3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water

---

[2] The Court may take judicial notice of these facts, even on a motion to dismiss. They reflect state judicial proceedings that are a matter of public record. The event is also featured prominently in the Plaintiffs' Complaint. (Complaint at ¶ 39). Consequently, this Court can take judicial notice of the facts represented in these documents without converting this 12(b)(6) motion to a motion for summary judgment. See Bryant v. Avado Brands Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999) (taking judicial notice of public records on file with the Securities and Exchange Commission); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (stating that courts may take judicial notice of undisputed matters of public record but may not take judicial notice of disputed facts stated in public records).

3

Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

Sheriff Clark and Deputy Inabinett are both entitled to qualified immunity. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). Qualified immunity will be denied to an official only when "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997). In the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The official is entitled to "fair warning" that his conduct would deprive a person of a constitutional right. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). In other words, do the facts alleged in the Plaintiffs' Complaint show that the conduct of Sheriff Clark and/or Deputy Inabinett violated a constitutional right? The second inquiry is, if a constitutional violation is stated, was the right "clearly established" to the degree that Sheriff Clark and/or Deputy Inabinett had "fair warning" that their conduct violated Plaintiffs' constitutional rights?

4

"Unless the Plaintiff's allegations state a claim of violation of clearly established law, a Defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery*." See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis added). The burden is on the Plaintiffs to show that Sheriff Clark and/or Deputy Inabinett violated clearly established law. Id. As the Eleventh Circuit has held:

> Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases. The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'

Lassiter v. Alabama A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149-50 (11th Cir. 1994) (en banc).

Qualified immunity mandates the dismissal of the Plaintiffs' claims in the case at bar. First, both Defendants were acting within their discretionary authority. Second, the allegations in the Complaint are not sufficient to establish a violation of the Plaintiffs' rights. Third, even if the Complaint could be deemed to state a constitutional violation, no clearly established law provided either Sheriff Clark or Deputy Inabinett with fair warning that their conduct was illegal.

**I.   BOTH SHERIFF CLARK AND DEPUTY INABINETT WERE ACTING WITHIN THEIR DISCRETIONARY AUTHORITY AT ALL TIMES RELEVANT TO THE PLAINTIFFS' COMPLAINT.**

Sheriff Clark and Deputy Inabinett were acting within their discretionary authority. The Eleventh Circuit has stated that discretionary authority is a low hurdle to clear. Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). A government official may show that he acted within the scope of his discretionary authority by showing that (1) the actions taken were pursuant to the performance of his duties; and (2) said actions were within the scope of his authority. Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988).

From the face of the Complaint, it is clear that both Sheriff Clark and Deputy Inabinett were acting within their discretionary authority. The Complaint alleges that "Deputy Chris Inabinett" was "an employee, officer or agent of the Sheriff's Department of Covington County." (Complaint at ¶ 5.) "Sheriff Anthony Clark" is alleged to be "the Sheriff of Covington County, Alabama." Id. at ¶ 6. Deputy Inabinett would not have had any reason to respond to a 911 call except as a deputy sheriff. For his part, Sheriff Clark only hires, retains, and trains deputies in his role as the Sheriff of Covington County. Consequently, Sheriff Clark and Deputy Inabinett easily clear the low hurdle of demonstrating that they acted within the scope of their discretionary authority. Rich, 841 F.2d at 1564.

## II. NEITHER SHERIFF CLARK NOR DEPUTY INABINETT VIOLATED THE PLAINTIFFS' CLEARLY ESTABLISHED RIGHTS.

With Sheriff Clark and Deputy Inabinett meeting their burden under the qualified immunity analysis, the burden shifts to the Plaintiffs to demonstrate that Sheriff Clark and Deputy Inabinett violated their federally protected rights. Saucier, 533 U.S. at 201. Under the facts alleged in the Complaint, neither Sheriff Clark nor Deputy Inabinett violated any of the Plaintiffs' constitutional rights. First, under the circumstances alleged in the Complaint, Deputy Inabinett did not use excessive force on either N.A. or Ms. Ainsworth. Second, Sheriff Clark did not fail to train Deputy Inabinett, and was not deliberately indifferent to a serious risk in hiring or retaining him as a deputy sheriff.

### A. Deputy Inabinett Did Not Use Excessive Force.

The test for determining whether an officer has applied excessive force in the course of seizing a person is the "objective reasonableness" test. Graham v. Connor, 490 U.S. 386, 395 (1989). The actions of the officer must be reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation. Id. at 397. "The

'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. Under Graham, a court reviewing a claim of excessive force considers factors such as the crime the officer is investigating and the threat to the safety of the officer or others. 490 U.S. at 396.

Here, Deputy Inabinett is accused of using excessive force: (1) against Ms. Ainsworth when he allegedly pushed her into the wall; and (2) against N.A. when Deputy Inabinett struck him and used the Taser. Viewing the facts pled in the Complaint through the lens of Graham leads one to the inevitable conclusion that Deputy Inabinett did not violate the Fourth Amendment.

As noted in the Complaint, N.A. was a "troubled" and unstable youth. (Complaint at ¶ 9.) Deputies from the Covington County Sheriff's Department had been forced to deal with him on "several" occasions. Id. at ¶ 10. At the time complained of by the Plaintiffs, N.A. was attempting to commit suicide by strangling himself with a belt. Id. at ¶ 11. N.A. was so severely agitated that he was literally "foaming at the mouth. Id. at ¶ 12. Ms. Ainsworth obviously thought the threat was significant enough to call 911 for help. Id. at ¶ 13.

Deputy Inabinett's actions, both in pushing past Ms. Ainsworth to get to N.A., and in subduing N.A., saved N.A.'s life. The reasonable officer faced with an emergency call of a suicide would not hesitate to push past anyone standing in his or her way. The reasonable officer faced with a person committing suicide would not hesitate to use force where the opportunity presented itself to end the threat posed by the person to his own life.

7

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted). Such is the case here. One cannot seriously argue with the results Deputy Inabinett achieved in a tense situation. Instead of a dead or seriously injured 16-year-old boy, this Court is presented with no more than a bruised arm and an infected cut.³ Under the dire circumstances of a violent 16-year-old threatening suicide, the force used by Deputy Inabinett was not excessive.

Furthermore, the *de minimis* nature of the Plaintiffs' alleged injuries mandates dismissal of their claims. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that the application of *de minimis* force will not support a claim for excessive force in violation of the Fourth Amendment.) In Nolin, the defendant officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and placed the plaintiff in handcuffs. 207 F.3d at 1255. The plaintiff allegedly suffered bruising to his forehead, chest, and wrists. Id. Here, the Plaintiffs suffered no more, if not less, harm than the Nolin plaintiff, and the mechanics of the force used are clearly less likely to cause serious harm (i.e., the use of a Taser on N.A., as opposed to slamming Mr. Nolin's head into a van).

Accordingly, as the force used by Deputy Inabinett was not excessive, and the Plaintiffs' injuries were *de minimis* in nature, Deputy Inabinett is entitled to qualified immunity and a dismissal of the Plaintiffs' excessive force claims.

---

³ In a footnote, the Plaintiffs assert that N.A. also suffered a "full-body charley horse." (Complaint at p. 4 n.1, citing Police magazine, Vol. 27, No. 6, June 2003.) The same article, attached hereto as Exhibit C, states that "studies have shown that **the incapacitation is temporary with no permanent effects on the subject**." Police magazine, Vol. 27, No. 6, June 2003.

### B. Sheriff Clark Did Not Violate the Plaintiffs' Rights.

Supervisory officials like Sheriff Clark are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). In other words, a supervisor may be held liable under § 1983 only when he directly participates in a violation of a plaintiff's federally protected rights or where the supervisor's actions directly cause the violation.

Here, the Plaintiffs have asserted essentially two theories of direct liability against Sheriff Clark. First, they claim that in hiring and/or retaining Deputy Inabinett, Sheriff Clark was deliberately indifferent to a serious risk of injury posed by Deputy Inabinett. (Complaint at ¶ 76.) Second, the Plaintiffs assert that Sheriff Clark was also deliberately indifferent to a serious risk of harm in failing to train Deputy Inabinett in how to handle the mentally ill. Id. at ¶ 77. Sheriff Clark was not deliberately indifferent in any respect regarding Deputy Inabinett.

As stated by the United States Supreme Court, in order to be deliberately indifferent, an official must both know of and disregard a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Farmer deliberate indifference standard contains both a subjective component (knowledge of the risk or willful blindness on the part of the supervisory official) and an objective component (whether there was a serious risk of harm). Id. at 838-39. As will be

9

made clear below, either or both of these elements are missing from each of the Plaintiffs' claims.[4]

### 1. Sheriff Clark Was Not Deliberately Indifferent to Any Risk In Hiring or Retaining Deputy Inabinett.

The only "facts" alleged by the Plaintiffs to support their hiring/retention claim against Sheriff Clark is a single incident of alleged excessive force in the Henderson case. (Complaint at ¶ 39.)  As noted previously, while it is true that Deputy Inabinett has been sued in that case, there have been no findings that Deputy Inabinett used excessive force.  It is also a judicially cognizable fact that the Covington County grand jury refused to indict.  Consequently, with respect to this one incident, Sheriff Clark can only be charged with knowing that an incident occurred in which a criminal grand jury found insufficient evidence existed of unlawful conduct to even warrant an indictment.  There are no facts whatsoever alleged in the Complaint with respect to anything Sheriff Clark knew about Deputy Inabinett before he hired him.

The allegations in the Complaint are insufficient as a matter of law to demonstrate that Sheriff Clark was deliberately indifferent to a risk of harm posed by Deputy Inabinett.  In Bd. of County Comm'rs of Bryan County, Okla. v. Brown, a sheriff hired a *relative* with a *criminal* history as a deputy sheriff.  520 U.S. 397, 401 (1997).  The deputy's history *prior to hiring* included "assault and battery, resisting arrest, and public drunkenness."  Id.  The deputy subsequently became involved in a traffic stop in which he forcibly removed the plaintiff from her vehicle and took her to the ground.  The plaintiff's knees were severely injured to the point that corrective surgery was necessary.  Id.

---

[4] Implicit in Sheriff Clark's argument is an acceptance, *arguendo*, that Deputy Inabinett violated the Plaintiffs' rights.  If the Court finds, as it should, that Deputy Inabinett did not violate the Plaintiffs' rights, there can be no supervisory liability on the part of Sheriff Clark.  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (setting an "extremely rigorous" standard for supervisory responsibility in requiring the existence of a causal connection between the actions of the supervising official and constitutional violations committed by subordinates).

In deciding the case, the United States Supreme Court held that:

Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference'".

. . .

As discussed above, a finding of culpability simply cannot depend on the mere probability that an officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

. . .

Even assuming without deciding that proof of a single instance of inadequate screening could ever trigger municipal liability, the evidence in this case was insufficient to support a finding that, in hiring [the deputy with a criminal history], Sheriff Moore disregarded a known or obvious risk of injury. To test the link between Sheriff Moore's hiring decision and respondent's injury, we must ask whether a full review of [the deputy's] record reveals that Sheriff Moore should have concluded that [the deputy's] use of excessive force would be a plainly obvious consequence of the hiring decision. On this point, the respondent's showing was inadequate.

. . .

Had Sheriff Moore fully reviewed [the deputy's] record, he might have come to [the conclusion that the deputy was a poor candidate for reserve deputy]. ***But unless he would necessarily reached the decision because [the deputy's] use of excessive force would have been a plainly obvious consequence of the hiring decision, Sheriff Moore's inadequate scrutiny of [the deputy's] record cannot constitute 'deliberate indifference' to respondent's federally protected right to be free from excessive force***.

Id. at 411-414 (italicized emphasis in the original, bold emphasis supplied).

Brown demonstrates just how high a burden the Plaintiffs in the instant case have in demonstrating that Sheriff Clark was deliberately indifferent. The Plaintiff has not alleged any facts whatsoever indicating what Deputy Inabinett's history was prior to his hiring. With respect to

11

Sheriff Clark's decision to retain Deputy Inabinett, it simply cannot be plausibly argued that the mere filing of a *civil* lawsuit arising from an incident in which a grand jury refused to indict "strongly" indicates that it would be "plainly obvious" that keeping the deputy on duty would directly lead to the use of excessive force against the Plaintiffs.

If a single *unproved and unadjudicated* lawsuit were sufficient to make a supervisory official liable, once a law enforcement officer was served with *his first lawsuit*, he would have to be fired immediately and never allowed back into the law enforcement field – regardless of the merits of the case. As Brown conclusively demonstrates, the law does not contain such an unworkable "zero tolerance" component. See also Cottone, 236 F.3d at 1360 (holding that "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.") (citation omitted).

With respect to the Plaintiffs' hiring claim, both the subjective and objective deliberate indifference elements are missing from the Plaintiff's Complaint. The Plaintiffs have not alleged any facts that Sheriff Clark was subjectively aware of from which a reasonable supervisory official would have concluded Deputy Inabinett's subsequent use of excessive force was a plainly obvious consequence. While the Plaintiffs have alleged a single incident of *alleged* excessive force that Sheriff Clark knew about, objectively, the alleged excessive force in this case is not a plainly obvious consequence of retaining Deputy Inabinett. Accordingly, Sheriff Clark is entitled to a dismissal of the Plaintiff's deliberate indifference hiring/retention claims.

### 2. **Sheriff Clark Was Not Deliberately Indifferent to Any Risk In Deputy Inabinett's Training.**

A supervisory official faces § 1983 liability only where the "'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains." Belcher, 30 F.3d

at 1397 (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)).  The Plaintiffs therefore have the burden of alleging that Sheriff Clark was aware of facts from which the reasonable official would conclude training was needed in dealing with the mentally ill, and that this failure to train resulted in the Plaintiffs suffering the injuries alleged in their Complaint. Id.  The Plaintiffs have not alleged any facts in their Complaint that satisfy any of their burden under Belcher.

The only fact pled by the Plaintiffs is that deputies from the Covington County Sheriff's Department had been to the Plaintiffs' home on "several" occasions to assist with administering medications to the Plaintiff.  (Complaint at ¶ 10.)  Tellingly, the Plaintiffs do not allege that they had problems with Sheriff Clark's deputies on the previous occasions.  See generally Complaint.  The only reasonable inference is that the deputies were properly trained.

Furthermore, the Complaint does not allege other instances of Deputy Inabinett's involvement with mentally ill persons.  See generally Complaint.  There are no allegations that Deputy Inabinett had mishandled mentally ill persons in the past.  Id.  Consequently, there are no facts alleged in the Complaint from which Sheriff Clark can be said to have been aware of a need to train his deputies generally or Deputy Inabinett specifically in dealing with the mentally ill. Accordingly, he cannot be said to have been deliberately indifferent, and is therefore entitled to qualified immunity on the Plaintiffs' failure to train claims.

**III.    NO CLEARLY ESTABLISHED LAW PROVIDED FAIR WARNING TO EITHER SHERIFF CLARK OR DEPUTY INABINETT THAT THEIR CONDUCT WAS ILLEGAL.**

Assuming, *arguendo*, that the Plaintiffs could demonstrate a constitutional violation, they must still show that clearly established law provided Sheriff Clark and Deputy Inabinett with fair warning that their conduct was unlawful.  The Plaintiffs may do so by either (1) pointing to a case

with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of these Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The cases involving materially similar facts (e.g., Nolin and Cottone) indicate that Sheriff Clark and Deputy Inabinett did not violate the Plaintiffs clearly established rights. In their Complaint, the Plaintiffs have not cited this Court to any case containing materially similar facts holding that the actions taken by either of these Defendants were illegal. Consequently, the Plaintiffs have the burden of either identifying such a case or demonstrating that this is an obvious clarity case.

As demonstrated by the arguments above, this is simply not an obvious clarity case. In particular, the Brown decision makes it clear that the deliberate indifference analysis is extremely fact intensive and that a single instance of misconduct pre-dating the alleged constitutional deprivation is insufficient. See 520 U.S. at 414-15. The analysis under Graham is also intensely fact sensitive and does not lend itself to obvious clarity resolution. Furthermore,

14

<u>Nolin</u> holds that *de minimis* injuries like those allegedly suffered by the Plaintiffs cannot result in § 1983 liability.

Consequently, even if the Plaintiffs are able to show a constitutional violation, they cannot demonstrate that clearly established law provided Sheriff Clark and Deputy Inabinett with the requisite fair warning that their conduct violated the Plaintiffs' constitutional rights.

## CONCLUSION

Based upon the foregoing, Covington County Sheriff Anthony Clark and Covington County Deputy Sheriff Chris Inabinett request that the Court issue an order dismissing all of the Plaintiffs' claims against them and grant unto them costs and attorneys' fees in accordance with 42 U.S.C. § 1988.

Respectfully submitted, this 6th day of September, 2005.

s/Gary L. Willford, Jr.
DARYL L. MASTERS – Bar No. MAS018
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of September, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay B. Lewis, Esq., and Keith A. Nelms, Esq.**

s/Gary L. Willford, Jr.
OF COUNSEL

15