IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANET AINSWORTH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 2:05-cv-740-B |
| | ) |
| DEPUTY CHRIS INABINETT, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

COMES NOW the Defendant, Covington County Deputy Sheriff Chris Inabinett, and files this Memorandum Brief in Support of his contemporaneously filed Motion to Dismiss Plaintiffs' Second Amended Complaint.[1]

### INTRODUCTION

The Plaintiffs bring this 42 U.S.C. § 1983 action against Deputy Inabinett alleging violations of their rights under the Fourth Amendment to the United States Constitution. Specifically, both Plaintiffs allege that Deputy Inabinett used excessive force against them.

As alleged in their Second Amended Complaint, the Plaintiffs' claims arise from an incident that occurred at their home in Red Level, Alabama. On July 13, 2005, Plaintiff N.A., who suffered from an unspecified mental illness, attempted suicide by wrapping a belt around his

---

[1] Immediately prior to Deputy Inabinett's filing of this motion, the Plaintiffs filed a Motion for Leave to Amend along with a Second Amended Complaint. The proposed Second Amended Complaint appears to correct the inadvertent re-naming of Sheriff Anthony Clark as a party Defendant. Neither Sheriff Clark nor Deputy Inabinett have an objection to the Plaintiffs' most recent Motion to Amend and, in fact, urge the Court to grant the motion. However, in the interests of judicial economy and moving this case forward, Deputy Inabinett requests that the Court accept the instant Motion to Dismiss as being applicable to the Plaintiffs' Second Amended Complaint and enter an appropriate briefing Order. Should the Court deny the Plaintiffs' Motion to Amend, Deputy Inabinett requests that the Court treat the instant motion as applicable to the Amended Complaint and Sheriff Clark reasserts the grounds for dismissal stated in his previously filed Motion to Dismiss the original Complaint.

neck and choking himself with it. Plaintiff N.A. was "in a distressed state and foaming at the mouth." (Second Amended Complaint at ¶¶ 11-12.) Plaintiff Janet Ainsworth called 911 to obtain help for N.A., who is her son. Id. at ¶ 13.

Officer David Anderson of the Red Level Police Department and Deputy Inabinett responded to Ms. Ainsworth's call for help. (Second Amended Complaint at ¶ 16.) According to the Second Amended Complaint, the Covington County Sheriff's Department was aware of N.A.'s violent propensities because deputies from the department responded to the Plaintiffs' home on "several occasions." Id. at ¶ 10. Officer Anderson arrived first and found N.A. holding on to the metal bars of his bed and "expressing great fear and apprehension." Id. at ¶ 18. N.A.'s anxiety was allegedly abating but he did not release his grip on the bed. Id. at ¶ 19.[2] In the only change between the Complaint and the Second Amended Complaint, the Plaintiffs now allege that N.A. was no longer attempting to harm himself and did not try to do so again. Id. at ¶ 18.

At this point, Deputy Inabinett arrived with his Taser drawn. (Second Amended Complaint at ¶ 21.) Deputy Inabinett pushed Ms. Ainsworth out of the way to get to N.A.'s room, causing Ms. Ainsworth to strike the wall and bruise her arm. Id. at ¶ 23. Deputy Inabinett leaped on to the bed where N.A. was still holding on to the headboard and apparently still had the belt wrapped around his neck. Id. at ¶¶ 18, 19, 24. Deputy Inabinett first attempted to gain control of N.A. by striking him, and when that failed, finally obtained control of him by using his Taser. Id. at ¶ 25, 29. N.A. was placed in handcuffs, arrested, and taken to a hospital. Id. at ¶ 35.

According to the Second Amended Complaint, Deputy Inabinett has been involved in *one* other case of *alleged* excessive force. (Second Amended Complaint at ¶ 39.) The Plaintiffs'

---

[2] The Plaintiffs aver that N.A. "began to release his grip on the headboard of the bed," but they do not allege that he actually let go of it. (Second Amended Complaint at ¶ 19.)

2

hyperbole notwithstanding, the incident underlying Henderson v. Inabinett, United States District Court for the Middle District of Alabama, Case Number 2:05-cv-64, has **not** resulted in any finding that Deputy Inabinett engaged in excessive force. The Henderson case has only now entered the discovery phase as a review of PACER quickly reveals. (Exhibit A, Civil Docket for Case # 2:05-cv-64, printed December 13, 2005, "Henderson docket.") Additionally, the Covington County grand jury refused to even indict Deputy Inabinett, or anyone else for that matter, for anything done in the Henderson case. (Exhibit B, Covington County Grand Jury Return, Case No. 567.)[3] The Plaintiffs' attorneys are well aware of these facts as they also represent the Plaintiff in the Henderson case. (Henderson docket at p. 1.)

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Second Amended Complaint contains little more than conclusory allegations that cannot survive a motion to dismiss. See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F. 3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in

---

[3] The Court may take judicial notice of these facts, even on a motion to dismiss. They reflect state judicial proceedings that are a matter of public record. The event is also featured prominently in the Plaintiffs' Complaint. (Second Amended Complaint at ¶ 39). Consequently, this Court can take judicial notice of the facts represented in these documents without converting this 12(b)(6) motion to a motion for summary judgment. See Bryant v. Avado Brands Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999) (taking judicial notice of public records on file with the Securities and Exchange Commission); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (stating that courts may take judicial notice of undisputed matters of public record but may not take judicial notice of disputed facts stated in public records).

the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

Deputy Inabinett is entitled to qualified immunity and a dismissal of the Plaintiffs' claims. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). Qualified immunity will be denied to an official only when "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997). In the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The official is entitled to "fair warning" that his conduct would deprive a person of a constitutional right. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). In other words, do the facts alleged in the Plaintiffs' Second Amended Complaint show that the conduct of Deputy Inabinett violated a constitutional right? The second inquiry is, if a

constitutional violation is stated, was the right "clearly established" to the degree that Deputy Inabinett had "fair warning" that his conduct violated Plaintiffs' constitutional rights?

"Unless the Plaintiff's allegations state a claim of violation of clearly established law, a Defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery*." See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis added). The burden is on the Plaintiffs to show that Deputy Inabinett violated clearly established law. Id. As the Eleventh Circuit has held:

> Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases. The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'

Lassiter v. Alabama A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149-50 (11th Cir. 1994) (en banc).

Qualified immunity mandates the dismissal of the Plaintiffs' claims in the case at bar. First, Deputy Inabinett was acting within his discretionary authority. Second, the allegations in the Second Amended Complaint are not sufficient to establish a violation of the Plaintiffs' rights. Third, even if the Second Amended Complaint could be deemed to state a constitutional violation, no clearly established law provided Deputy Inabinett with fair warning that his conduct was illegal.

**I.  DEPUTY INABINETT WAS ACTING WITHIN HIS DISCRETIONARY AUTHORITY AT ALL TIMES RELEVANT TO THE PLAINTIFFS' SECOND AMENDED COMPLAINT.**

Deputy Inabinett was acting within his discretionary authority. The Eleventh Circuit has stated that discretionary authority is a low hurdle to clear. Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). A government official may show that he acted within the scope of his discretionary authority by showing that (1) the actions taken were pursuant to the performance of

his duties; and (2) said actions were within the scope of his authority.  Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988).

From the face of the Second Amended Complaint, it is clear that Deputy Inabinett was acting within his discretionary authority.  "Deputy Chris Inabinett" is alleged to be "an employee, officer or agent of the Sheriff's Department of Covington County."  (Second Amended Complaint at ¶ 5.)  Deputy Inabinett would not have had any reason to respond to a 911 call except as a sheriff's deputy.  Consequently Deputy Inabinett easily clears the low hurdle of demonstrating that they acted within the scope of his discretionary authority.  Rich, 841 F.2d at 1564.

## II. DEPUTY INABINETT DID NOT VIOLATE THE PLAINTIFFS' CLEARLY ESTABLISHED RIGHTS.

The burden now shifts to the Plaintiffs to demonstrate that Deputy Inabinett violated their clearly established federally protected rights.  Saucier, 533 U.S. at 201.  The Plaintiffs cannot meet this burden.  Under the relevant and mandatory tests for analyzing excessive force, Deputy Inabinett's actions as alleged in the Second Amended Complaint were reasonable and appropriate.

The test for determining whether an officer has applied excessive force in the course of seizing a person is the "objective reasonableness" test.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The actions of the officer must be reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation.  Id. at 397.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

the amount of force that is necessary in a particular situation." Id. at 396-97. Under Graham, a court reviewing a claim of excessive force considers factors such as the crime the officer is investigating and the threat to the safety of the officer or others. 490 U.S. at 396.

Here, Deputy Inabinett is accused of using excessive force: (1) against Ms. Ainsworth when he allegedly pushed her into the wall; and (2) against N.A. when Deputy Inabinett struck him and used the Taser. Viewing the facts pled in the Second Amended Complaint through the lens of Graham – even taking into consideration the Plaintiffs' "new" facts that N.A. was no longer attempting to hurt himself – leads one to the inevitable conclusion that Deputy Inabinett did not violate the Fourth Amendment.

As noted in the Second Amended Complaint, N.A. was a "troubled" and unstable youth. (Second Amended Complaint at ¶ 9.) Deputies from the Covington County Sheriff's Department had been forced to deal with him on "several" occasions. Id. at ¶ 10. Consequently, it is clear from the Second Amended Complaint that Deputy Inabinett was well aware of N.A.'s violent propensities.

At the time complained of by the Plaintiffs, N.A. was attempting to commit suicide by strangling himself with a belt. Id. at ¶ 11. N.A. was so severely agitated that he was literally "foaming at the mouth. Id. at ¶ 12. Ms. Ainsworth obviously thought the threat was significant enough to call 911 for help. Id. at ¶ 13.

The Plaintiffs now allege that when Deputy Inabinett arrived, N.A. had stopped trying to hurt himself and did not try to do so again. (Second Amended Complaint at ¶ 18.) However, N.A. still had a belt around his neck and was still holding on to the bed. Id. at 11-21. There is nothing in the Second Amended Complaint that even suggests Deputy Inabinett had reason to believe that N.A. would not try to hurt himself again.

7

Deputy Inabinett's actions, both in pushing past Ms. Ainsworth to get to N.A., and in subduing N.A., saved N.A.'s life. The reasonable officer faced with an emergency call of a suicide would not hesitate to push past anyone standing in his or her way. The reasonable officer faced with a person who had been reported as attempting to commit suicide would not hesitate to use force where the opportunity presented itself to end the threat posed by the person to his own life.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted). Such is the case here. One cannot seriously argue with the results Deputy Inabinett achieved in a tense situation. Instead of a dead or seriously injured 16-year old boy, this Court is presented with no more than a bruised arm and an infected cut.[4] Under the dire circumstances of a violent 16-year old threatening suicide, the force used by Deputy Inabinett was not excessive.

Furthermore, the *de minimis* nature of the Plaintiffs' alleged injuries mandates dismissal of their claims. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that the application of *de minimis* force will not support a claim for excessive force in violation of the Fourth Amendment.) In Nolin, the defendant officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and placed the plaintiff in handcuffs. 207 F.3d at 1255. The plaintiff allegedly suffered bruising to his forehead, chest, and wrists. Id. Here, the Plaintiffs suffered no more, if not less, harm than

---

[4] In a footnote, the Plaintiffs assert that N.A. also suffered a "full-body charley horse." (Complaint at p. 4 n.1, citing Police magazine, Vol. 27, No. 6, June 2003.) The same article, attached hereto as Exhibit C, states that "studies have shown that ***the incapacitation is temporary with no permanent effects on the subject***." Police magazine, Vol. 27, No. 6, June 2003.

the Nolin plaintiff, and the mechanics of the force used are clearly less likely to cause serious harm (i.e., the use of a Taser on N.A., as opposed to slamming Mr. Nolin's head into a van).

Additionally, the Eleventh Circuit recently has ruled that use of a Taser on a non-complying motorist who was not under arrest or "physical or fighting in any way" was not an excessive use of force. Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004). In Draper, the plaintiff truck driver was stopped by the defendant officer for an equipment violation. The officer asked five times for the driver to produce various documents including registration and the driver's log book. During this time, the driver was yelling and verbally abusive to the officer but did not attack him. Without warning or announcing that the driver was under arrest, the officer then discharged his Taser into the driver. 369 F.3d at 1272-74. In finding that the officer did not use excessive force and was entitled to qualified immunity, the Eleventh Circuit stated "[a]lthough being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used – a single use of the taser gun causing a one-time shocking – was reasonably proportionate to the need for force and did not inflict any serious injury." Id. at 1278.

Here, N.A. had attempted suicide. He was still holding on to the bed with a belt wrapped around his neck. If a law enforcement officer is entitled to qualified immunity for tasing a motorist who is verbally abusive and refuses to retrieve documents from his truck, ***clearly*** Deputy Inabinett is entitled to qualified immunity under the facts alleged here.

### III. NO CLEARLY ESTABLISHED LAW PROVIDED FAIR WARNING TO DEPUTY INABINETT THAT HIS CONDUCT WAS ILLEGAL.

Assuming, *arguendo*, that the Plaintiffs could demonstrate a constitutional violation, they must still show that clearly established law provided Deputy Inabinett with fair warning that his conduct was unlawful. The Plaintiffs may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent

9

federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of Deputy Inabinett was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The cases involving materially similar facts (e.g., Nolin and Draper) indicate that Deputy Inabinett did not violate the Plaintiffs' clearly established rights. In their Second Amended Complaint, the Plaintiffs have not cited this Court to any case containing materially similar facts holding that the actions taken by Deputy Inabinett were illegal. Consequently, the Plaintiffs have the burden of either identifying such a case or demonstrating that this is an obvious clarity case.

As demonstrated by the arguments above, this is simply not an obvious clarity case. In particular, the Draper decision authorized some of the very force applied in this case under circumstances that were far less compelling. Nolin holds that *de minimis* injuries like those allegedly suffered by the Plaintiffs cannot result in § 1983 liability. Furthermore, the general excessive force analysis contained in Graham is intensely fact sensitive and does not lend itself to obvious clarity resolution. Consequently, even if the Plaintiffs are able to show a constitutional violation, they cannot demonstrate that clearly established law provided Deputy Inabinett with the requisite fair warning that his conduct violated the Plaintiffs' constitutional rights.

## CONCLUSION

Based upon the foregoing, Covington County Deputy Sheriff Chris Inabinett requests that the Court issue an order dismissing all of the Plaintiffs' claims against his and grant unto him costs and attorneys' fees in accordance with 42 U.S.C. § 1988.

Respectfully submitted, this 13th day of December, 2005.

> s/Gary L. Willford, Jr.
> DARYL L. MASTERS – Bar No. MAS018
> GARY L. WILLFORD, JR. – Bar No. WIL198
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Road (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Jay B. Lewis, Esq., and Keith A. Nelms, Esq.**

> s/Gary L. Willford, Jr.
> OF COUNSEL